## Webb v. Commonwealth.

February 14, 1950.

As Extended on Denial of Rehearing May 12, 1950.

Edward P. Hill, Judge.

Jasper H. Preece and Edward L. Allen for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE CAMMACK—Affirming.

Columbus Webb was convicted of the crime of willful murder and sentenced to death. On November 22, 1949, we reversed the judgment because the indictment

failed to include the words, "against the peace and dignity of the (Commonwealth)," as required by Section 123 of the Constitution. On December 9, 1949, the Commonwealth filed a motion to withdraw the opinion and set aside the order of submission of the case. It also tendered a supplemental record certified by the Clerk of the Martin Circuit Court showing that the indictment was prepared on a printed form which concluded with the words, "Contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the Commonwealth of Kentucky." The affidavits of William R. McCoy, County Attorney of Martin County, and Luther Fields, Clerk of the Martin Circuit Court, were filed in support of the motion. We sustained the motion and withdrew the opinion handed down November 22nd. After a careful consideration of the case on its merits we have concluded that the judgment must be affirmed.

Shortly before his trial in December, 1948, Columbus Webb was found by a jury to be of sound mind. He did not testify at his trial. According to Webb's confession, he went to the home of the deceased, Elijah Davis, on September 28, 1948, when told by a small boy that Davis's wife (Amy Jane Davis, a woman with whom Davis was living) had asked him to come up there. He found the couple up a hollow sawing wood. After helping Davis a while he returned home and the same boy came down and asked him to come up to Davis's place early the next morning. When he reached Davis's home, Amy Jane said that Davis was up in the hills getting his horse. Amy Jane gave him a gun and told him Davis had $450.00 in his pocket and for him to take the money without killing Davis and meet her over the hill. When he found Davis he told him, "Elijah, I don't want to hurt you, don't aim to kill you, but me and your wife only wants your money." He made Davis walk up the hill to a haul road and Davis took some change out of his pocket and said that was all the money he had. When he told Davis he knew he had more money in his shirt pocket Davis said he was going to kill him and broke off a limb. As Davis advanced toward him he shot him three times and snapped the gun twice. He kicked Davis in the stomach and then got the money. When Davis started to get up he hit him with the gun. As he was walking away Davis said, "Columbus, if I live and

get over this I will kill you." The statement continued, "And that made me kindly mad, and I went back and hit him another lick or two, and told him to lay back down on the ground, and he *layed* down. * * *" He dragged Davis's body down by a log and covered it with bushes and then went on over the hill and into West Virginia. When Webb was arrested in West Virginia he had the money on him.

Davis's body and the pistol were found where Webb said he had placed them. Amy Jane Davis said that, when Webb first came to the house, he asked for a saw. He then forced his way into the house and made her give him the pistol, threatening to kill her if she refused. He threw her on the bed and put a pillow over her head. He made no attempt to attack her. According to her testimony, Webb said he was going to kill someone, and forced her to go up the branch with him some distance. She then went to the home of M. T. Davis for assistance. While there the shots were heard. The bullet wounds in Davis's body corrresponded to where Webb said he shot him.

The principal ground urged for reversal is that the Commonwealth failed to show the crime was committed in Martin County, or even in the State of Kentucky. Officials of Martin County went to the scene of the shooting and found the body and pistol where Webb said they had been placed. In addition, other testimony placed Webb near the scene of the killing and shots were heard at about the time he said they were fired. A deputy sheriff, when asked the following question, "This body and pistol handles and iron wedge found there—were they in Martin County?" answered, "Yes, sir." According to Webb's own statement, he hid the body of the deceased only a few feet from the spot where the homicide occurred. We think the evidence was amply sufficient to show that the crime was committed in Martin County, Kentucky. As pointed out in the case of *Rounds v. Commonwealth*, 282 Ky. 657, 139 S. W. 2d 736, it takes only slight evidence, either direct or circumstantial, to sustain venue, since that does not affect the question of guilt or innocence.

The second complaint is that it was error to permit Amy Jane Davis to testify as to what transpired at the house before Webb went up the hollow with the pistol.

Of course, Amy Jane denied all that Webb said about her telling him that Davis had $450.00 on him and that she and Webb had planned to go away together after he got the money. However, her testimony was competent to show Webb's state of mind. According to what she said, Webb took the gun from her, saying he was going to kill someone. Actually it was only a short time thereafter until he did shoot Davis and rob him.

Complaint is made as to the admission of the evidence showing that Amy Jane was living in adultery with Davis and that Davis had a wife from whom he had not been divorced. This fact was brought out by Webb's counsel when he examined Amy Jane as one of Webb's witnesses. But, in any event, we fail to see how this evidence could have been prejudicial to Webb.

One complaint of the instructions is that the question of self-defense was not properly presented to the jury. This contention we believe to be groundless, because the usual self-defense instruction was given, and this was all to which Webb was entitled.

It is contended also that an instruction should have been given on insanity. We have already noted that a sanity hearing had been held for Webb shortly before the trial. Furthermore, no evidence as to Webb's alleged insanity was offered at the trial which would have warranted an instruction on that question. It is true that counsel said he was not able to testify at the trial, and that there was other testimony showing that he had been sick while in jail. As we have said, however, it was not contended seriously on the trial that Webb was insane.

There is the further contention that an instruction should have been given presenting the question of whether the witness, Amy Jane Davis, was an accomplice. Section 241 of the Criminal Code of Practice is relied upon. This section follows: "Testimony of accomplice must be corroborated. A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

By agreement, counsel for Webb read to the jury

his statement as to how the crime was committed. **This** statement implicated Amy Jane Davis, but Webb **was** the one being tried. According to his own statement **he** was guilty of murder. We see no basis for an instruction as to whether Amy Jane Davis was an accomplice.

For the reasons given we think the judgment should be and it is affirmed.